

FILED
JUN 28 2018
Clerk, U.S. District and Bankruptcy Courts

UNITED STATES OF AMERICA,

Plaintiff,

v.

ANDRE SMITH,

Defendant.

**Criminal No. 13-022 (CKK)**
**(Civil Action No. 16-1349)**

## MEMORANDUM OPINION
(June 27, 2018)

Presently before the Court is Defendant Andre Smith's [21] Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. The Defendant, who is proceeding *pro se*, requests that the Court reconsider or reduce his sentence pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the "residual clause" found in the definition of the term "violent felony" in the Armed Career Criminal Act (ACCA) was unconstitutionally vague. The Defendant further argues that *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) applies to his case because *Dimaya* extended the vagueness doctrine announced in *Johnson* "to other federal statutes including the one in the instant case." Def's Reply to Govt.'s Opp'n, ECF No. [25]. Upon review of the parties' submissions,[1] the relevant authorities, and the record as a whole, the Court finds that the Defendant is not entitled to the requested relief. Accordingly, the Court shall DENY the Defendant's Motion to Vacate Sentence.

---

[1] Def's Mot. to Vacate Sentence, ECF No. [21], Govt.'s Opp'n, ECF No. [24], Def's Reply to Govt.'s Opp'n, ECF No. [25], Govt.'s Response to Def's Reply to Govt.'s Opp'n, ECF No. [28].

1

# I. BACKGROUND

## A. *Factual Background*

Defendant pled guilty to Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), and to Possession of a Firearm During the Commission of a Crime of Violence or Dangerous Offense, in violation of 22 D.C. Code § 4504(b). Plea Agreement, ECF No. [10]. The underlying facts in this case to which the Defendant agreed in a signed statement and during the plea colloquy under oath are as follows: On November 26, 2012, at approximately 12:17 a.m., MPD Sixth District Police Officers in full uniform were driving their marked police cruiser eastbound on Ridge Road, S.E. when they saw a Ford Crown Victoria driving toward them from the opposite direction. Gov't Factual Proffer (May 29, 2013) at 3, ECF No. [9]. The car was being driven by the Defendant and there was another individual in the front passenger seat. *Id.* As the Ford approached the officers, they saw that it only had one functioning headlight. *Id.* After the Ford passed, the officers made a U-turn to get behind the automobile in order to make a traffic stop. *Id.* When the officers completed the U-turn, the Ford immediately accelerated and began to flee from the officers. *Id.* As the officer turned on the emergency lights and siren and pursued the Ford, the Defendant increased his speed and turned right onto Minnesota Avenue. *Id.* The Defendant was unable to completely negotiate the turn onto Minnesota and struck the curb. *Id.* The right rear tire of the Ford blew out and the car came to a stop diagonally across Minnesota Avenue. *Id.* As the officer pulled up behind the Ford, the Defendant and the front seat passenger jumped out of the automobile and ran in opposite directions. *Id.* As the Defendant got out of the car, he was holding a dark colored pistol in his hand. *Id.* Another officer arrived in a marked patrol car and drove after the Defendant, crossing over the median strip onto the opposite side of Minnesota

2

Avenue. *Id.* That officer was directly behind the Defendant when the Defendant turned around and pointed his pistol directly at the officer and continued to run with the pistol still in his hand. Gov't Factual Proffer (May 29, 2013) at 3-4, ECF No. [9]. The Defendant ran into a parking lot of a business at the corner of Minnesota and Ames Street. Gov't Factual Proffer (May 29, 2013) at 4, ECF No. [9]. As the Defendant continued to flee, another officer pulled his patrol car in front of the Defendant at the apartment building and the Defendant turned around and ran back up the hill. *Id.* The Defendant still had the pistol in his hand as he was chased by the officers, and he unsuccessfully tried to throw it into a dumpster by the apartment building. *Id.* The Defendant ran up the hill and slipped and fell to the ground. *Id.* Moments later, the Defendant turned onto his stomach but propped himself up on his hands as if he was going to get up and run again. *Id.* The officer holstered his weapon and jumped on the Defendant's back and placed him in handcuffs. *Id.* The pistol that the Defendant dropped was a Springfield Arms .40 caliber semi-automatic loaded with 18 rounds of ammunition. *Id.*

### B. *Written Plea Agreement*

The Defendant signed a written plea agreement on May 29, 2013. *See* Gov't Plea Agreement (May 29, 2013), ECF No. [10]. The agreement contained a section entitled "Andre Smith's Obligations, Acknowledgements, and Waivers" which included Defendant's agreement

> to admit guilt and enter a plea of guilty to Count One and Count Three of the pending Indictment, charging Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) and a consecutive sentence for Possession of a Firearm During the Commission of a Crime of Violence or Dangerous Offense, in violation of 22 D.C. Code § 4504(b).

Gov't Plea Agreement (May 29, 2013) at 1, ECF No. [10].

The plea agreement also contained a signature page with a heading entitled "Defendant's Acceptance." The paragraphs under this heading read as follows:

3

> I have read this five page plea agreement and have discussed it with my attorney, Shawn Moore, Esquire. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully. I am pleading guilty because I am in fact guilty of the offense identified in paragraph one.
>
> I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement. I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it.

Gov't Plea Agreement (May 29, 2013) at 5, ECF No. [10].

The plea agreement also specifically advised that "[the] client understands that the sentence in this case will be imposed in accordance with 18 U.S.C. Sections 3553(a) and 3553(c) through (f)," "that the sentence is to be imposed is a matter solely within the discretion of the Court," and "that the Court is not obligated to follow any recommendation of the Government at the time of sentencing." Gov't Plea Agreement (May 29, 2013) at 2, ECF No. [10].

### *C. Sentencing*

On August 13, 2013, this Court committed Defendant to the custody of the Bureau of Prisons for a term of thirty-seven months (Count One), followed by a term of sixty months (Count Three), both with credit for time served. These consecutive terms of incarceration were each to be followed by a thirty-six-month term of supervised release. The two terms of supervised release were to run concurrently, following the consecutive terms of incarceration. Finally, this Court ordered Defendant to pay a special assessment of $100 for each count.

### *D. Present Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255*

On June 24, 2016, Defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255. Def's Mot. to Vacate, ECF No. [21]. Defendant alleges that the recent Supreme Court decision from *Johnson v. United States*, 135 S. Ct. 2551 (2015), finding the residual clause of the Armed

4

Career Criminal Act (ACCA) unconstitutionally vague, is relevant to his case. Def's Mot. to Vacate at 5, ECF No. [21]. Defendant argues that the Solicitor General in *Johnson* "provided a comprehensive list of crimes that would fall to the unconstitutionality of the ACCA's residual clause," and that "§ 22-[4504] was included in this attachment." *Id.* Defendant suggests that he may be innocent of the conviction of possession of a firearm during a crime of violence where the assault, in his case, would now be defunct under *Johnson. Id.* Moreover, Defendant argues that, in light of the Supreme Court's recent decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), "the vagueness doctrine as viewed in *Johnson* applies with equal force to other federal statutes including the one in this instant case." Def's Reply to Govt.'s Opp'n at 1, ECF No. [25]. Defendant concludes that this Court should "take notice of the *Dimaya* decision and permit the Government to either oppose the request or join Defendant's motion to vacate the conviction." Def's Reply to Govt.'s Opp'n at 2, ECF No. [25].

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

However, the remedy set forth by § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). The circumstances under which such a motion will be granted "are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal." *United States v. Burwell*, 160 F. Supp. 3d 301, 308

5

(D.D.C. 2016). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). However, the decision whether to hold a hearing is entrusted to the district court's discretion, particularly where, as here, the reviewing judge presided over the proceeding in which the petitioner claims to have been prejudiced. *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1131 (1997). "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition . . . ." Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 4.

### III. DISCUSSION

Defendant requests that the Court reconsider his sentence of sixty months incarceration for Possession of a Firearm During the Commission of a Crime of Violence or Dangerous Offense in light of the *Johnson* and *Dimaya* decisions. The Court finds that Defendant's request shall be denied for the reasons described herein.

The Court first considers whether Defendant's motion is timely. *See United States v. Cicero*, 214 F.3d 199, 202 (D.C. Cir. 2000) ("We consider first application of the time limitation in § 2255 . . . ."). Effective April 24, 1996, in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress enacted a one-year period of limitations on the filing of § 2255 motions through Section 105 of the AEDPA, which amended 28 U.S.C. §2255 to state that:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of
>
> (1) the date on which the judgment of conviction becomes final;

6

(2) the date on which the impediment to making a motion created by government action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

"In most cases, the operative date from which the limitation period is measured will be the one identified in" § 2255(f)(1)—the date on which the judgment of conviction became final. *Dodd v. United States*, 545 U.S. 353, 357 (2005). Here, Defendant's conviction became final in 2013. Defendant filed this motion on July 21, 2016—well past the one-year limitation period. Thus, Defendant's motion is untimely under § 2255(f)(1).

However, Defendant claims that his motion is timely under § 2255(f)(3)—"the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Consequently, the Court next considers the merits of this argument as it relates to application of the Armed Career Criminal Act (ACCA) in this case. Under the ACCA, a defendant convicted of violating § 922(g) is subject to a mandatory minimum sentence of fifteen years' imprisonment if the defendant has three prior convictions for a "violent felony," a "serious drug offense," or both. 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(i) has an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another[.]*

*United States v. Johnson* struck down the italicized language—the residual clause—as unconstitutionally vague because it leaves "grave uncertainty" about "how to estimate the risk posed by a crime" as well as about "how much risk it takes for a crime to qualify as a violent felony." 135 S. Ct. 2551, 2357-58 (2015). The Court concluded that the clause "denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.*, at 2357. In 2016, *Welch v. United States* held that "*Johnson* is . . . a substantive decision and so has retroactive effect under *Teague* [*v. Lane*, 489 U.S. 288 (1989,]* in cases on collateral review." 136 S. Ct. 1257, 1265 (2016).

The ACCA did not play any role in Defendant's sentence. The ACCA is a federal statute that is used to enhance sentences in federal criminal cases. In contrast, Possession of a Firearm During the Commission of a Crime of Violence or Dangerous Offense, under D.C. Code § 22-4504(b)—the provision that Defendant now challenges—is a substantive offense. Moreover, § 22-4504(b) indicates that "crime of violence" is "defined in § 23-1331(4)." The § 23-1331(4) definition enumerates specific, concrete offenses that constitute "crime[s] of violence." Thus, the vagueness doctrine announced in *Johnson* is not at issue in Defendant's case.

Defendant contends that the Supreme Court's recent decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), extended the vagueness doctrine announced in *Johnson* "to other federal statutes including the one in the instant case." Def's Reply to Govt.'s Opp'n at 1, ECF No. [25]. However, *Dimaya* extended the doctrine to 18 U.S.C. § 16(b) because

[Section] 16(b) has the same "[t]wo features" that conspire[d] to make [ACCA's residual clause] unconstitutionally vague." [*Johnson*], 135 S. Ct., at 2557. It too

8

> "requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents" some not-well-specified-yet-sufficiently-large degree of risk. 135 S.Ct. at 2556-2557. The result is that § 16(b) produces, just as ACCA's residual clause did, "more unpredictability and arbitrariness than the Due Process Clause tolerates." 135 S. Ct. at 2558.

*Dimaya*, 138 S. Ct. at 1216.

A residual clause is not included in the definition of "crime of violence" found in D.C. Code § 22-4504(b). Rather, §22-4504(b) uses the concrete definition of "crime of violence" that is found in D.C. Code § 23-1331(4). Therefore, *Johnson* does not apply and the limitation period must be measured using § 2255(f)(1). Because Defendant's motion is untimely under § 2255(f)(1), it is denied.

## IV. CONCLUSION

For all of the foregoing reasons, the Court shall DENY Defendant's [21] Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. Furthermore, no Certificate of Appealability shall issue from this Court. To the extent the Defendant intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22.

An appropriate order accompanies this memorandum opinion.

/s/
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE